### McCAMPBELL *et al. v.* BROWN *et al.*

*(Circuit Court, S. D. Ohio, W. D. January 26, 1892.)*

**1. EQUITY JURISDICTION—TRUSTS.**
A bill brought by the assignee of a partnership alleged that the partnership held a mortgage upon the lands of a cattle company, and that, for the purpose of discharging the same, the company negotiated a sale thereof through one B., who agreed to take as his commission a mortgage upon the company's cattle; that by the terms of the sale the deed was placed in escrow, the depositary also receiving a part of the price, under an agreement to apply the same to the discharge of the liens on the land, including complainants' mortgage; that, while in the midst of the transaction, B., fraudulently, and for the purpose of coercing the payment of his commission in cash, commenced a suit against the cattle company, and garnished the purchaser; and that thereupon complainants agreed with the depositary, as agent of the purchaser, that the depositary should retain a sum sufficient to cover B.'s claim, until an order could be obtained from a competent court for the payment of the same to complainants. The bill asked that B. should be decreed to have no claim upon the fund, and that the purchaser be decreed to pay the balance of the price to complainants. *Held,* that, as the bill showed that the money was held in trust, it stated a case cognizable in equity, although B. was no party to the trust agreement.

**2. SAME.**
The fact that the money so held was subsequently retransferred by the depositary to the purchaser did not discharge the trust.

**3. SAME—REMEDY AT LAW.**
In cases involving trusts the jurisdiction of equity is not dependent upon the absence of a remedy at law.

**4. EQUITY—PARTIES.**
The bill having alleged that the partnership was in fact solvent, but had been compelled to make an assignment because of the cattle company's failure to pay its mortgage, it was not a misjoinder of parties to make the individuals of the partnership parties plaintiff with their assignee, since these allegations showed that there might be a surplus for distribution to the partners after the discharge of the partnership liabilities.

In Equity. Suit by Edwin A. McCampbell, as assignee of Doddridge & Co., and others, against J. R. P. Brown and David Sinton. Heard on demurrer to the bill. Overruled.

#### STATEMENT BY SAGE, J.

The bill sets forth that the complainant is the assignee of the estate and effects of the copartnership of Doddridge & Co., of Corpus Christi,

Tex., and that on April 26, 1888, the Dimmitt County Pasture Company, a corporation under the laws of Texas, executed to Doddridge & Co. its mortgage upon about 180,000 acres of land in Texas, to secure the payment of $64,000, and subsequent advances to be made. For the purpose of paying off this mortgage and other incumbrances the pasture company placed their property on the market for sale. The defendant J. R. P. Brown, on behalf of the pasture company, entered upon negotiations for the sale of the property to the defendant David Sinton. The pasture company proposed through Brown to sell said lands to Sinton for the price of $2 per acre, and upon the execution and delivery of the deed to take a lease of the land from him for a term of 10 years, and to pay as rent therefor the sum of 10 cents per acre, the pasture company also agreeing to pay all taxes on the land, and to keep up fences and the ranch premises. One dollar and sixty-two and a third cents per acre was to be paid in cash, and the balance of the purchase money to be retained by Sinton to secure the payment of the lease money. On this balance he was to pay interest at the rate of 5 per centum per annum. Sinton accepted the proposition, with the exception that the amount reserved as above from the purchase money should be increased $10,000, and the rent be paid quarter-yearly from said reserves; the lease to be for five years, with privilege of extension for an additional term of five years on the same terms and conditions, or with such other security for the rent as might be agreed upon. These modifications, which were under date May 30, 1891, were accepted by the pasture company. At the same time Brown agreed to take for his commission a mortgage on the cattle on the ranch or other security for $10,000.

The bill sets forth that, in order to provide the means of completing the sale, the pasture company executed its deed of conveyance of said lands to Sinton, and placed the same in the hands of Charles P. Taft, in escrow, to be delivered to Sinton whenever the incumbrances should be fully removed. Sinton, to provide the means of completing the sale on his part, placed the necessary funds in the hands of Taft for the payment of the incumbrances upon the land, and Taft was authorized, whenever satisfied that the title was cleared, to deliver the deed to Sinton, and Sinton then was to complete payment to the complainant Mc-Campbell as assignee.

The bill further sets forth that on the 19th of June, 1891, while the parties were in the midst of the transaction of purchase as above set forth, the defendant Brown, fraudulently, and for the purpose of coercing, in violation of his agreement, a payment of his commission in cash, brought his action in the court of common pleas of Hamilton county, Ohio, against the pasture company, for $10,000, and caused a writ of attachment to issue, and the defendant Sinton to be garnished. The transaction had then proceeded so far that it could not be stopped, and the complainants, under the stress of circumstances, agreed with Taft, as the agent of Sinton in that behalf, that all the balance of the purchase money should be paid to them upon their mortgage, and receipted for as full payment of purchase price in the hands of Taft for Sinton, until an order could be obtained from a court of competent jurisdiction di-

recting the payment of that money to the complainants in a proceeding that would operate as a protection to Sinton, and that in the mean time "they should hold said fund in trust for your orators." Accordingly, all the balance of the purchase money excepting $10,650 was paid over to the complainants, and that amount was left in the hands of Taft "in trust for the purpose aforesaid, and subsequently by him turned over to said Sinton, and still remains in the hands of said Sinton, in trust for the purposes aforesaid."

It further appears from the bill that as a part of the contract of sale, and as a mode of enabling it to be completed, it was agreed that the money should be applied directly to taking up and cancelling the incumbrances upon said property, the mortgage to Doddridge & Co. held by the complainant McCampbell, as assignee, being the last, and the money payable thereon being insufficient to wholly discharge it; and that this was the only practicable way by which the parties could accomplish the sale. The complainants aver that the sum so held by Sinton "does not, and did not at any time, belong to said pasture company, and that, in pursuance of the agreement aforesaid between said Brown and Sinton and the said pasture company and the said Doddridge Company, it was to be paid to the said assignee of Doddridge & Co. upon their mortgage as aforesaid, with the express agreement with the said Brown that he should have no payment out of the said purchase money, but would take his compensation, and such as belonged to his associates, in the form of notes secured by mortgage of the said pasture company."

The complainants further aver that Sinton did not, when served as garnishee, hold any money belonging to the pasture company, and liable to attachment in suit against said company, nor has he since held any such money; and that the only claim made against Sinton is for an account of the said $10,650.

The bill further avers the insolvency of Brown, and that, if the money shall be collected by him in said proceeding, it will be entirely lost to the complainants, and that they are without an adequate remedy at law; that Brown refuses to release the attachment, and is pressing said action with the view and intent of subjecting said money in the hands of Sinton to his own use upon his said claim, and that the complainants are not parties to that proceeding.

The prayer of the bill is that Brown may be adjudged to have no claim upon said fund, and that complainants' title thereto may be quieted as against him; that Sinton may be ordered and decreed to pay over to the complainants said sum of $10,650, and for other and further relief.

The respondent Brown demurs to the bill—*First*, for insufficiency; *second*, because, if the complainants have any cause of complaint against respondent, they have a plain, adequate, and complete remedy at law; and, *third*, that there is a misjoinder of parties respondent.

*Bateman & Harper*, for complainants.

*J. A. Warner*, *Job E. Stevenson*, and *J. J. Glidden*, for respondents.

SAGE, J., (*after stating the facts as above.*) The demurrer is on behalf of the respondent Brown, upon the ground that the bill shows no cause for equitable relief against him. The contention of counsel is that he was no party to the trust agreement set up in the bill, whereby $10,-650 of the purchase price was transferred by Sinton to Taft, to be held by him until an order could be obtained from a court of competent jurisdiction directing the payment of that money to complainants in a proceeding that would operate as a protection to Sinton, and that in the mean time they should hold said fund in trust for the complainants. Counsel say that the rights of Brown could in no manner be affected by that arrangement, and that neither the pasture company nor the complainants, nor both combined, with or without the concurrence of Sinton, could create a trust controlling Brown's rights in the fund. Nothing of that sort is claimed or set up in the bill. It is perfectly clear that the rights of Brown could not be affected or in any way abridged by any agreement to which he was not a party. Nothing of the sort is claimed on behalf of the complainants. On the contrary, they expressly recognize that the trust agreement was subject to whatever rights Brown had in the premises. They do claim that Brown was bound by his agreement with the complainants to take a mortgage as specified in the bill for his claim, and all that was stipulated for in the trust arrangement was that the money should be left in the hands of Taft, for Sinton, until an order could be obtained from a court of competent jurisdiction directing its payment to complainants. The demurrer must be overruled. The averments of the bill are that the money was a trust fund in the hands of Charles P. Taft for the purposes stated in the bill. The subsequent transfer of the money by Taft to Sinton did not and could not destroy the trust. What effect shall be given to this trust agreement is not a question now before the court. It was made after the commencement of Brown's action in the state court, and while that was still pending. But this cause is not in conflict, nor in any sense an interference, with that action. This court cannot directly or indirectly enjoin proceedings in a state court. What has been done in the action there, if anything, does not yet appear. All that is now decided is that the bill states a case in favor of the complainants.

The objection that the complainants have a plain, adequate, and complete remedy at law is not well founded. The bill avers a trust. The jurisdiction in equity is undoubted. It was argued upon the hearing of the demurrer that the holding by Taft was as bailee, and not as trustee. How it may turn out to be upon the testimony remains to be ascertained. We are now dealing with the averments of the bill, and, as they set forth the transfer and delivery of the money by Sinton to Taft, in trust for the purposes specified, there is nothing upon which the argument that this is a case of bailment can be sustained.

The objection that there is a misjoinder of parties complainant must also be overruled. The bill sets forth that, although Doddridge & Co. were in fact solvent, their means were unavailable for the conduct of their business and immediate payment of their debts, by reason of the

failure of the pasture company to pay its liabilities to them, and that they therefore made an assignment of their property to their co-complainant McCampbell, for the use and benefit of their creditors. There was no objection, under these circumstances, to making the partners of Doddridge & Co. co-complainants with the assignee, because it appears from the face of the bill that there may be a surplus after discharging the liabilities of the partnership, which might, in that event, be decreed to the partners themselves.